(Decided 3rd May, 1889.)

JESSE L. DEVILBISS *vs.* PINKNEY J. BENNETT, Trustee and Committee.

*Insane persons Charged with Crime, &c.—Proceedings under sections 4–11, of Article 58, of the Code of 1860, (Code of 1888, Art. 59)—Proceedings for Accounting by Trustee of the Insane person, Appointed in such cases—Courts of Equity.*

Sections 4–11, of Article 58 of the Code of 1860, (re-enacted in Article 59, of the Code of 1888,) provide for judicial proceedings in respect of insane persons charged with crime. Section 8, of the Article provides that the provisions of the preceding sections in regard to the case of persons under indictment or arrest for crime, who appear to be insane, "shall apply to the case of any person who may be arrested on any process issued by any Court or Judge of this State, founded on oath, requiring security to keep the peace, and who shall fail to give such security." On the 15th of June, 1886, a peace warrant was issued by a magistrate during the recess of the Court, in which it was charged on oath that there was danger that D. would injure his own family or do them some bodily hurt. Under this warrant D. was arrested by the sheriff in order that he might be required to give security to keep the peace. On the next day while he was thus in custody, on the petition of a relative addressed to one of the Judges of the Court, a jury of inquisition was summoned under the provisions of the sections above referred to, who found that D. "was insane at the

Devilbiss *vs.* Bennett.

time the alleged cause for swearing the oath of the peace against him occurred, and is still insane at the finding of this inquisition." Upon this finding the Judge passed an order committing him to a hospital for the insane, at the expense of his estate, to be paid by a trustee thereafter to be appointed; It appearing that his estate was abundantly sufficient to pay all such expenses. HELD:

That the case as presented to the Judge, was within the spirit and intent of the law, and it was not essential to the validity of his action that he should go through the useless formality of issuing himself a new process to the sheriff for the arrest of a party already in his custody, and ascertaining that no one would come forward to become his security, in order to gratify the letter of the statute.

Afterwards, on the 31st of July, 1886, B. was appointed trustee of the estate of D. and committee of his person, and gave the prescribed bond. D. remained in the hospital until the 8th of April, 1888, when upon *habeas corpus* he was declared to be restored to his reason, and was discharged from custody. Prior to such discharge the trustee made a report to the Court sitting in equity, of his proceedings, and filed inventories of the property which had come into his hands, and shortly after the discharge he made a final report, and asked that both reports be referred to the auditor, and that he be allowed proper commissions, and a reasonable fee to his counsel for their professional services. HELD:

1st. That there was no good ground of objection to these proceedings on the part of the trustee.

2nd. That his appointment as trustee, and the condition of his bond, made it his duty to account in a Court of equity for all the estate, income, and effects of D. which came into his possession, or under his care and direction.

3rd. That he had the right to be relieved of his trust in such a way as effectually to release his bond, and his sureties thereon, and a Court of equity was the most appropriate, if not the only, tribunal from which such a release could be obtained.

APPEAL from the Circuit Court for Carroll County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*Albert Ritchie* and *William P. Maulsby*, for the appellant.

*Charles B. Roberts*, for the appellee.

MILLER, J., delivered the opinion of the Court.

Sections 4 to 11 of Article 58 of the Code of 1860, have long been part of the law of the State, and have been re-enacted without alteration by the adoption of the recent Code, which is the last expression of the Legislative will upon the subject. *Code of* 1888, *Art.* 59, *secs.* 4 *to* 11. They provide a mode by which lunatics, and insane persons when tried for or charged with the commission of crime shall be humanely dealt with and treated. They recognize the rule which prevails in all civilized nations that such unfortunate persons ought not to be subject to the same penalties or treatment as are justly meted out to those who are sane.

The provisions are, *first*, that when any person indicted for a crime or misdemeanor shall allege insanity or lunacy as a defence, the jury empannelled to try him shall find by their verdict whether he was at the time of the commission of the offence, or still is, insane, lunatic or otherwise, and if they find that he was and still is insane or lunatic, the Court shall cause him to be sent to the almshouse, or to an hospital, or some other place better suited in the judgment of the Court to his condition, there to be confined until he shall have recovered his reason and be discharged by due course of law. *Second*, that when any person arrested for, or charged with, any offence, against whom no indictment has been found, shall appear to the Court or be alleged to be lunatic or insane, the Court shall cause a jury of twelve good and lawful men forthwith to be empannelled, and shall charge them to inquire into the matter, and if they find he was insane at the time the act

complained of was committed and still is so, then the Court is required to make a like disposition of him. *Third*, if during the recess of the Court any person appearing or alleged to be insane shall be arrested and charged with any offence before the Judge thereof, he shall issue an order to the sheriff, requiring him forthwith to summon a like jury and charge them to make a like inquiry, and if they return a like verdict or inquisition, the Judge is required to deal with the party in the same manner, and it is expressly provided that these provisions "shall apply to the case of any person who may be arrested on any process issued by any Court or Judge of this State, founded on oath, requiring security to keep the peace and who shall fail to give such security." *Fourth*, that if any such insane or lunatic person, who has not been indicted shall be possessed of real and personal property, the annual profit or rent of which shall be adequate to his reasonable support in any hospital or asylum for the insane, the Court or Judge shall appoint a trustee for his estate and require such trustee to give bond "with condition that he will cause the said lunatic or insane person to be confined and supported in some hospital or insane asylum until he shall have recovered his reason, and that he will faithfully administer and fully account for all such estate, income and effects of said lunatic or insane person as shall come to his possession or be under his care or direction."

Whenever, therefore, criminal process of any kind is put in force, against one who appears or is alleged to be insane, the law furnishes him protection, and forbids that he shall be punished or treated as a sane person would be under similar circumstances. When not under indictment the intervention is required to be prompt and immediate. His mental condition is at once ascertained by a public investigation before a

competent and impartial jury, in order that no injustice may be done him in this respect.   If found to be insane he is placed in an asylum where he can be properly treated to the end that his reason may, if possible, be restored, and where he will be prevented from committing further criminal acts, or doing violence to himself or others while he remains in this fearful and sad condition.   Such legislation is altogether beneficent, was enacted in the interest and for the protection of an unfortunate class of the community, and this explanation of its character and object practically decides the case before us.

A peace warrant was issued by a magistrate, on the 15th of June, 1886, during the recess of the Court, on the oath of Benjamin D. Franklin, who swore that he was afraid the appellant will injure his own family and the said Franklin or do them some bodily hurt.   Under this warrant the appellant was arrested by the sheriff, in order that he might be required to give security to keep the peace; but on the next day, while he was thus in custody, Mr. George Devilbiss, a relative, filed a petition addressed to one of the Judges of the Court alleging that the appellant was insane, and praying the Judge to issue an order to the sheriff, requiring him to summon a jury to inquire as to his sanity, and the Judge thereupon issued the order in the terms of the law.   The jury was summoned, sworn and charged by the sheriff.   The inquiry was had, and the jury found that the appellant "was insane at the time the alleged cause for swearing the oath of the peace against him occurred, and is still insane at the finding of this inquisition."   Upon this finding the Judge passed an order committing him to the Maryland Hospital for the insane at the expense of his estate, to be paid by a trustee thereafter to be appointed, it appearing that his estate is abundantly sufficient to pay all such expenses.

Devilbiss *vs.* Bennett.

It has been argued that the Judge had no jurisdiction, and his action was void, because the peace warrant was issued by a magistrate and not by the Judge himself, and because it does not appear on the face of the proceedings that the appellant had failed to give security to keep the peace. But we think the case as it was presented to the Judge, was clearly within the spirit and intent of the law as we have construed it. The attention of the Judge was called in the most formal manner to the fact that an insane man was in custody of the sheriff under a peace warrant issued by a justice of the peace, in which it was charged on oath that there was danger that he would do violence to his own family. This was brought to his notice by a relative of the party under arrest, who procured the services of the State's Attorney to prepare his petition, and he prayed the Judge to grant the relief which the law provides. Under such circumstances we do not think it was essential to the validity of his action that the Judge should go through the useless formality of issuing himself a new process to the sheriff for the arrest of a party already in his custody, and ascertaining that no one would come forward to become his security, in order to gratify the letter of the statute. Our opinion therefore is, that the action of the Judge was justified by the law, and is valid.

Afterwards on the 31st of July, 1886, the Judge, upon the recommendation of the wife and adult son of the appellant, appointed the appellee trustee of his estate and committee of his person. The trustee gave bond with the prescribed condition, which was duly approved. The appellant remained in the hospital until the 8th of April, 1888, when, upon *habeas corpus* he was declared to be restored to his reason, and was discharged from custody. In the meantime, on the 8th of October, 1886, the trustee made a report to the

Devilbiss *vs.* Bennett.

Court, sitting in equity, of his proceedings, and filed inventories of the property which had come into his hands and under his management; and on the 28th of April, 1888, shortly after the appellant's release, he made another and final report stating what he had done, and asking that both reports be referred to the auditor with directions to state an account of the trust estate, allowing him such commissions as are right and proper in such cases, and also a reasonable fee to his counsel for their professional services.

We perceive no good ground of objection to these proceedings on the part of the appellee. He was duly appointed trustee of the estate of the appellant, and this trust continued until the latter's discharge under the writ of *habeas corpus.* He was bound to account for all the estate, income and effects of the appellant, which came into his possession or under his care and direction. We think it clear that his appointment as trustee, and the condition of his bond not only gave him the right, but made it his duty thus to account in a Court of equity. He also had the right to be relieved of his trust in such a way as effectually to release his bond and his sureties thereon, and a Court of equity is the most appropriate, if not the only, tribunal from which such a release could be obtained. The question as to what allowances shall be made to the appellee is not before us, and can only arise upon exceptions to the account when it shall be stated by the auditor. The appellant has full liberty to object to any item of such account, and can thus protect himself from any unlawful, improper, or extravagant charges.

*Order affirmed, and*
*cause remanded.*

(Decided 3d May, 1889.)