## HAMILTON *v.* STATE

[No. 270, September Term, 1960.]

*Decided May 8, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Edward B. Rybczynski* for the appellant.

*Thomas W. Jamison, III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *Robert V. Lazzaro, Assistant State's Attorney,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

The only question presented by this appeal is whether it was reversible error for the lower court to try the defendant-appellant (Joseph Hamilton) on a charge of armed robbery, to which a plea of not guilty by reason of insanity (in addition to the usual plea of not guilty) had been entered, absent a pretrial mental examination of the defendant by the Department of Mental Hygiene (the Department).

Since it is conceded that the evidence was legally sufficient to convict him of the offense charged, the facts, other than those involving the procedural aspects of the case, will be limited to the testimony produced by the defendant as to his alleged insanity. The defendant testified that he had had prior mental difficulties, that on the day of the robbery he was suffering from mental strain because his wife had disappeared, that he had considered committing suicide, that he began drinking several hours before the hold-up and that as a result of his inebriety he did not remember participating in the crime. The fact that he was emotionally upset on the day in question was corroborated by his brother.

After the defendant had rested his case, the State offered, and the trial court received into the evidence, a medical report made by Dr. Manfred S. Guttmacher, the chief medical

officer of the Supreme Bench of Baltimore City, who had examined the defendant prior to the trial. Neither the report nor a summary of the contents was included in the record extract, but we may assume that the medical officer was of the opinion that the defendant was capable of cooperating in the preparation of his defense.

The defendant did not object to the admission of the medical report; nor did he ever complain, either before, during or after the trial, that he had not been examined by the Department pursuant to the pertinent provisions of the Code relating to insanity as a defense in criminal cases. The court, sitting without a jury, after stating that there was no evidence to indicate that he was insane, declared that the defendant was sane at the time of the offense and at the time of the trial, and entered a verdict of guilty of robbery with a deadly weapon.

On this appeal, though he did not raise the point or question below, the appellant asserts that when he filed a plea of not guilty by reason of insanity the trial court was required to order that he be examined by the Department before the trial was commenced.

The appellee, pursuant to Maryland Rule 836 d, included a motion to dismiss the appeal in its reply brief on the merits. Relying on the provisions of Rule 885, the State argued on the motion that the appeal should be dismissed because the only question presented in this Court was neither raised nor decided in the lower court. The motion was heard first and, a decision thereon having been reserved, oral arguments were also heard on the merits.

The statutes concerning insanity as a defense in criminal cases are codified as §§ 7 through 12 of Article 59 (Lunatics and Insane) in the Code of 1957. Section 7, among other things, provides that a defendant desiring to interpose insanity as a defense shall file a plea alleging insanity, in addition to other pleas required or permitted by law, and that the issue of insanity raised by the special plea shall be tried by a jury or by the court in accordance with the procedures set forth therein. It is further provided therein that the trial

court shall have discretionary power and authority to order an examination of the mental condition of a defendant by the Department at any time before trial.

Section 9 provides in pertinent part that whenever a person charged with the commission of a criminal offense appears to be or is alleged to be or is suspected of being insane, the court may cause the Department to inquire whether such person, at the time of the inquiry, is insane or of such mental capacity as to prevent him from properly conducting, or advising as to the conduct of, his defense. It is further provided that if such person is found to be without sufficient mental capacity to participate in his defense, the court may direct that he be confined in one of the institutions for the care and treatment of the criminal insane and stay the proceedings until he shall have recovered, at which time there shall be a trial of the pending charge.

Section 11 requires that whenever a person—who has been arrested and charged with a criminal offense and committed in default of bail to await further proceedings — has been brought before a court having criminal jurisdiction (including a justice of the peace) and appears to be or is alleged to be insane, the judge of the court shall commit him to jail or send him to an institution for the care of the insane and cause the Department to be notified of such commitment. It is further provided that the Department shall examine such person promptly and report its findings to the court as to his mental capacity. And in the event he is found to be incapable of participating in his defense, there are further provisions (comparable to those in § 9) for his confinement and care and treatment pending his recovery and trial on the charge.

The appellant, in claiming that § 11 was applicable to his particular situation, contended at the argument on the motion that the provisions of this section, unlike those of §§ 7 and 9, are obligatory and that the lower court lacked power or authority to try him until after he had been examined by the Department. The reason for the claim is not clear to us. Nor are we able to determine with any degree of certainty from the record before us which of the sections would have

been applicable. Indeed, since the appellant plead not guilty by reason of insanity, it would seem that § 7 was applicable. But, be that as it may, the question seems to be immaterial in this instance for when the three sections are read together, as we think they must be, it is apparent that the statutes were enacted to provide, and in fact one of them (§ 9) specifically prescribes, a rule of procedure common to all by which to ascertain before trial whether or not a defendant charged with a criminal offense is capable of making a rational defense to the charge. Cf. *Devilbiss v. Bennett*, 70 Md. 554, 17 Atl. 502 (1889).

The basic purpose of these code sections (7 through 12) is and has always been paternalistic in nature. As was said by this Court in *Deems v. State*, 127 Md. 624, 627, 96 Atl. 878 (1916), the purpose of this legislation is "to protect an offender who is mentally incapable of forming a criminal intent from being punished as if he were sane, and to insure for him the custody and treatment best suited to his unfortunate condition." See also *Devilbiss v. Bennett, supra.*

That this is so is borne out by a perusal of the legislation passed more than a century and a quarter ago in recognition of the universal rule that insane persons ought not to be subject to the same treatment as those who are sane. There it will be seen that the forerunners of §§ 7 and 9 were originally enacted as §§ 1 and 2 of Chapter 197 of the Acts of 1826. Though there was no provision then in § 1 (now § 7) for a pretrial examination of a defendant who had plead insanity, § 2 (now § 9) in effect then provided that when a person arrested for or charged with an offense against whom no indictment had been found appeared to the court or was alleged to be insane, the court should cause a jury of twelve men to be empanelled for the purpose of inquiring into the matter, and if such person should be found to be insane at the time the act complained of was committed and was still so at the time of the inquest, then the court was required to send such person to the almshouse, or to a hospital, or some other place better suited to his condition, there to be confined until he recovered his reason and was discharged by

due process of law.[1] In 1916 when §§ 7 and 9 (which were then §§ 4 and 6, respectively, of Art. 59 in the Code of 1912), were repealed and re-enacted by Chapter 699 of the Acts of 1916,[2] the trial court was clothed with discretionary power and authority in § 7 to require a pretrial examination by the lunacy commission (now the Department) and in § 9 an examination made by that commission was substituted for the outmoded inquest by a jury. The primary purpose of § 11 (which was not enacted until 1920 as Ch. 735 of the Acts of that year as § 7-A of Art. 59 in the Code of 1912), as the title of the act recites, was "to provide for the custody, pending trial, of persons alleged to be insane who are charged with crime and are unable to procure bail."

Thus, when the purpose of the code sections under consideration is reduced to simple terms, it appears that § 7 authorizes the trial court to require a pretrial examination to ascertain the capability of a defendant to make a rational defense to a pending indictment or information to which he has plead not guilty by reason of insanity; § 9, in addition to prescribing the method by which that fact shall be determined, permits a court to order an examination, regardless of whether a formal charge is then pending, whenever it appears to the court or it is alleged that the person charged may be insane; and § 11 requires an examination whenever an apparently or allegedly insane person is arrested and charged with an offense and is unable to procure bail. And, in the event it is determined that the defendant is incapable at the time of the examination of participating in a trial, it is contemplated that all of the issues involved in the proceeding (including the issue of insanity) shall be stayed until such time as the defendant shall have recovered his reason. Certainly there is nothing in any of the code sections (7 through

---

1. This is still the law when a defendant has been found to be insane and is committed to an institution after a trial on an issue of insanity. See Code (1957), Art. 59, § 8.

2. There have been other amendments since 1916 (Acts of 1931, ch. 436; Acts of 1933, Sp. Sess., ch. 81; Acts of 1949, ch. 685, §§ 6, 8), but none have any particular bearing on the instant question.

12) to indicate that the trial court was without jurisdiction to hear and determine the insanity issue in this case until after the defendant had been examined by the Department. On the contrary, we think it is clear that §§ 7, 9 and 11 (insofar as they concern a pretrial mental examination) were designed as practical rules of procedure to determine in advance of a trial on the merits whether the defendant had sufficient mental capacity to participate in his defense.

Since the sections are procedural, and not jurisdictional, the defendant—in not objecting to the admission of the report of the medical officer of the court, and especially in not complaining to the trial court that it had failed to proceed in accordance with the terms of the statutes—must be deemed to have waived his right to a pretrial examination by the Department. There is therefore nothing for this Court to review and the appeal must be dismissed. It appears, however, since the appellant had been examined by an eminent psychiatrist before trial, that the spirit of the law, if not the letter, had been complied with despite the failure of the appellant to invoke it.

*Appeal dismissed.*