TULL *v.* STATE

[No. 185, September Term, 1962.]

598

*Decided February 12, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*George E. Bahen, Jr.,* and *Hobart B. Hughes,* with whom were *Hughes & Bahen* on the brief, for appellant.

*Harrison M. Robertson, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *C. Burnam Mace, State's Attorney for Dorchester County,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Appellant was tried in the Circuit Court for Dorchester County, by a jury, on a charge of murder of his wife, June Marie Tull. From a verdict of guilty of murder in the first degree and a sentence of death by the administration of a lethal gas, he has taken this appeal.

About 5:30 A. M., September 25, 1961, state troopers were called to a rural area near Eden, in Somerset County, Maryland. Upon arriving at the scene, they discovered the bodies of Paran Dashiell, father-in-law of the appellant, and of the appellant's wife. Mr. Dashiell, who was found lying on his face with his shoulder against the back steps of his home, was dead of a gunshot wound in his chest. A thirty-two caliber revolver was found under his body. Mrs. Tull, who was found lying on her back in the road adjacent to the homes of Mr. Dashiell and a neighbor, Talbert A. Gunther, had been beaten to death. Her body was near Mr. Gunther's house, a distance of 270 yards from the home of Mr. Dashiell. The barrel and the bolt assembly of a thirty caliber rifle were found near her body, one end being matted with hair and blood. The appellant was apprehended at 11:00 A. M., September 27, in the loft of a church social hall, about one mile from the scene of the crime. He was taken to the Salisbury State Police barracks where he made a statement confessing the two killings. The statement was admitted into evidence without objection after it was affirmatively shown that it was given freely without coercion or promise.

The uncontradicted evidence, in conjunction with appellant's statement, shows that he had been having marital difficulties, brought on, as he believed, by his father-in-law. On the night of September 24, 1961, in Salisbury he had a conversation with one Killibrew, wherein he indicated he wanted a pistol. He stated he was going to visit someone who had a pistol and he did not want to go there unarmed. Failing to acquire a pistol, he engaged a cab in Salisbury, driven by Rutley Dashiell. The driver took him to Tyaskin, Maryland, where appellant entered the house of his sister and obtained some clothes and a rifle. After returning to Salisbury, where he obtained a small bottle of whiskey, they continued on to Eden, where the driver put him out at a crossroads, a short distance from his father-in-

law's home. This was approximately 4:00 A. M. on the morning of September 25.

At about 4:30 A. M. appellant intercepted his father-in-law outside of his house. Mrs. Dashiell, in her kitchen, heard her husband say "let go of me." Then she heard a gunshot. As she started for the door, appellant entered the kitchen and struck her several times with the rifle, the broken stock of which was later found in the kitchen. Mrs. Tull, the deceased, ran out of her bedroom and out of the back door. The appellant chased her to Mr. Gunther's home. Mr. Gunther, who had heard the shot, and was standing inside the door of his house, saw Mrs. Tull attempt to open a gate of his yard. He saw Tull swinging something at her. After calling the police, he ran out to Mrs. Tull, and in shining a light in appellant's face, recognized him. Tull dropped the object in his hand and fled across a field to a nearby wooded area.

Other facts necessary to the decision of the case will be set out hereafter. Appellant has raised six questions on this appeal. They will be dealt with separately.

I

Did the trial court err in not granting appellant's motion challenging the array?

Appellant submitted four questions to be asked each prospective juror on the *voir dire*. One question was: "Have you formed or expressed any opinion as to the guilt or innocence of James Omar Tull, the defendant?" After several jurors had been questioned, and only one accepted due to challenges of the others, one Gerald Lewis Williams, in response to that question answered: "Yes. * * * What I read in the paper I think he's guilty." Other prospective jurors, in addition to the one already accepted, heard this statement. Counsel for appellant then moved to challenge the array. This motion was overruled. In the subsequent *voir dire* examination, the court asked each prospective juror if the statement of Mr. Williams would affect his opinion, to which the jurors ultimately accepted answered in the negative, as did the one juror previously selected. It is apparent that the court below remedied any possible prejudice of the jury by adding this question to those propounded on its *voir dire*.

## II

Did the court below commit error in not granting appellant's motion for a separate trial on the issue of insanity?

Counsel for appellant filed a written motion for a separate trial as to the issue of insanity, alleging that "the testimony may tend to confuse the jury or create prejudice in the minds of the jury," if this were not done. The motion was orally renewed at the trial and was denied.

This is a novel point in Maryland. Insanity as a defense in criminal cases is covered by statute in Code (1957), Article 59, §§ 7-15, as amended. Section 7 of this Article sets forth the procedure for filing a plea of insanity as a defense, and as well, the procedure of the court or jury in bringing in its findings. It provides that the court, on its own motion, or upon application of the State or the defendant, may direct the jury to find specially whether the defendant was sane at the time of the commission of the crime and whether he was sane at the time of the trial. The crucial part of the section seems to be that the court "shall, * * * direct any jury impanelled to try such case to find specially, by its verdict, * * *" if defendant was sane. Taking this in conjunction with Rule 720, allowing a plea of not guilty by reason of insanity, leads us to the conclusion that there is no requirement that the issue of insanity should be tried separately.

## III

Did the court err in admitting the testimony of Drs. Cushard and Hamilton over appellant's objection?

Dr. Cushard and Dr. Hamilton, both qualified psychiatrists, were respectively superintendent and clinical director of the Clifton T. Perkins State Hospital. They testified for the State to the effect that, through their examination of the appellant, he was sane at the time of the commission of the crime and at the time of the trial. Counsel for appellant contend that only Dr. Prado, Director of Correctional Psychiatry for the Department of Mental Hygiene, should have been allowed to testify on the question of insanity. (Dr. Prado did testify for appellant to the effect that he was not responsible at the time of the

killing of his wife.) They base this contention on Code (1957), Article 59, § 11. This section basically provides that in cases punishable by death or confinement where insanity is alleged, the Department of Mental Hygiene shall make the examination and report. Counsel for appellant argue that Dr. Cushard and Dr. Hamilton, being subordinate to Dr. Prado, should not be allowed to testify as to their findings. In addition, they argue that Dr. Prado examined appellant several times, while Drs. Cushard and Hamilton only observed appellant at two staff conferences.

We feel this question is answered by *Hazel v. State,* 226 Md. 254, 173 A. 2d 187, cert. den. 368 U. S. 1004, 82 S. Ct. 638, 7 L. Ed. 2d 542. In that case, there was disagreement between the experts as to the issue of insanity. It was argued that the director should have made the report. This Court held that whether the report was made by the director or by the superintendent, the sections of Article 59 do not impose any preliminary requirement or condition to proceeding with the trial. They merely provide the means to obtain information on the question of insanity. Since the jury had the benefit of the testimony of all three psychiatrists, including cross examination, in order to determine if appellant was sane or insane, we do not find that he was prejudiced. See also *Hamilton v. State,* 225 Md. 302, 170 A. 2d 192.

## IV

Was it error to admit the exclamation of Paran Dashiell, uttered prior to death?

The testimony of Mrs. Dashiell indicates that her husband exclaimed "let go of me" just prior to the shot that evidently resulted in his death. Counsel for appellant insist this was hearsay and irrelevant at his trial for the murder of June Marie Tull.

It is true that this trial did not involve the murder of Paran Dashiell. Generally, a defendant placed on trial for an offense should not be prejudiced by introduction of evidence of other independent acts of wrongdoing. *Wilson v. State,* 181 Md. 1, 26 A. 2d 770. However, that same case stated, at page 3:

"Evidence of declarations and acts, which are an immediate accompaniment of the act charged and so

closely connected with the main fact as to constitute a part of it, and without which the main fact might not be properly understood, are admissible as a part of the *res gestae*. * * * Whether such a declaration or act is an immediate accompaniment is tested, not by the closeness of time, but by casual [causal] connection."

See also *Wood v. State,* 191 Md. 658, 62 A. 2d 576; 1 Wharton, *Criminal Evidence,* (12th Ed.), § 279. We think the statement was admissible to show appellant's aggressive intent during the sequence of events leading to the death of June Marie Tull.

## V

Was it error to allow the State to ask a hypothetical question of appellant's expert witness on cross examination and re-cross examination?

The question propounded to Dr. Prado on cross examination was: "If after his father-in-law had died, if Tull had taken the precaution and the time to do so, to figure out what he was doing, did he have the capacity to determine that it was wrong and that he could be punished for it?"

It is well settled that an expert may be asked to give an opinion on facts that he has heard testified to, or on a hypothetical question based on evidence in the case. It must be based on facts in the case. *Allison v. State,* 203 Md. 1, 6, 98 A. 2d 273. There was evidence that appellant chased his wife for about 270 yards before catching her and delivering the final blows which resulted in her death. Assuming the validity of this testimony, there was some basis for the part of the question referring to the possibility of appellant having time to deliberate.

Even if the question was an improper hypothetical question, which we need not decide, we feel that appellant was not prejudiced, since Dr. Prado qualified his answer to it in such a way as to materially aid appellant. He testified, in answer to the question, that even if appellant had taken time, the shock of his killing his father-in-law would have been disruptive of his mental condition so as to preclude his ability to understand the consequences of his act.

## VI

Did the State meet the burden of proof of sanity, and, was there legally sufficient evidence to sustain a conviction of murder in the first degree?

The trial court, in its instructions, placed the burden of proving sanity beyond a reasonable doubt upon the State. Therefore, we need not decide the question of who has the burden of proof where insanity is at issue, since the court required the stricter standard. *Dunn v. State,* 226 Md. 463, 475, 174 A. 2d 185.

As to the sufficiency of the evidence to sustain the conviction of murder in the first degree, in this jury case, the scope of our review is not to determine whether the State has proved its case beyond a reasonable doubt, but whether there was any relevant evidence properly before the jury which would sustain the conviction. *Smallwood v. State,* 216 Md. 16, 17, 139 A. 2d 242, cert. den. 357 U. S. 912, 78 S. Ct. 1160, 2 L. Ed. 2d 1162; *Briley v. State,* 212 Md. 445, 129 A. 2d 689. Counsel for appellant raises the questions of deliberation and premeditation, asserting that even if appellant were sane, the killing was the result of an instant impulse. Upon the evidence, however, it appears the jury could have found such deliberation and premeditation.

"Although the design to kill must precede the killing by some appreciable length of time, that time need not be long. If the killing be not the instant effect of impulse, if there be hesitation or doubt to overcome, a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder."

*Hyde v. State,* 228 Md. 209, 215, 179 A. 2d 421.

Though we feel that counsel for appellant have ably presented this case on appeal, we find that there is no merit in the contentions raised, or reversible error, so that the judgment must be affirmed.

*Judgment affirmed.*