# BRADFORD *v.* STATE

[No. 289, September Term, 1963.]

506

*Decided May 4, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ, and reargued before the entire Court.

*William O. Goldstein,* (on both arguments), with whom was *Roland Walker* on the brief, for the appellant.

*Fred Oken, Assistant Attorney General,* (on both arguments), with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Andrew J. Graham, State's Attorney* and *Assistant State's Attorney,* respectively, for *Baltimore City,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

In this criminal case, we are confronted for the first time with questions as to which party—the prosecution or the defendant—has the burden of proof on the issue of insanity and as to which degree of proof—beyond a reasonable doubt or preponderance of the evidence—should be applied.

These appeals are from the judgments entered by the lower court after it had found the defendant (Carl David Bradford, Sr.) guilty in a nonjury trial of several cases involving statutory rape and assaults of female children ranging in age from eleven to fourteen years.

The defendant, who owned and operated a grocery store in Baltimore City, resided with his sister in living quarters above the store. He employed several young girls of the neighborhood on a part time basis to work in the store. One of them, with the permission of her parents, who were moving to the country, came to live with the defendant and his sister so as to be able to continue attending a nearby public school and working in the store. She had her own room in the apartment above the store, and, on two occasions, while she was a member of the household, the defendant entered her room in the nighttime and had sexual intercourse with her. On other occasions, when the defendant was alone in the store with other of his young female employees, he used obscene language, made indecent solicitations, and molested them by placing his hands on them.

Following his arraignment, at which he filed pleas of not guilty by reason of insanity, the defendant was confined for approximately two months in the Clifton T. Perkins State Hospital for a determination of his mental status.

At the trial of the defendant, Dr. Victor Gregory, a psychiatrist on the staff at Perkins, testified that after examining the defendant on numerous occasions, he was of the opinion that he had a chronic brain syndrome with a paranoid type of schizophrenic reaction. On the basis of this conclusion, he thought that the defendant "was unable to distinguish right from wrong and adhere to the right" on the dates the offenses were committed. His opinion was shared by Dr. Murray, another member of the hospital staff. On cross-examination, Dr. Gregory produced the hospital report signed by Dr. Cushard, the superintendent, and Dr. Hamilton, the clinical director. The report was based on a finding made at a staff conference at which the defendant was present. In essence, the report stated that, although the defendant suffered from a mild chronic brain syndrome, he was a responsible agent at the time of the commission of the offenses and that he had sufficient mental capacity to stand trial. But the report did not express the unanimous opinion of the three psychiatrists (Drs. Gregory, Hamilton and Murray) who were at the conference. Although Dr. Cushard signed the report, he did not attend the conference. Nor did he ever examine the defendant. Dr. Hamilton, who had not observed the defendant prior to the conference, concluded that he was sane, whereas Drs. Gregory and Murray were of the opinion that he was mentally irresponsible.

Dr. Oscar G. Prado, a psychiatrist on the staff of the State Department of Mental Hygiene, was ordered by the lower court to observe the defendant and to express an opinion in relation to the insanity plea. His report, based on a single examination, stated that the defendant was a responsible agent at the time of the commission of the offenses and that he was competent to stand trial. At the trial, Dr. Prado testified that at the time of the offenses the defendant "was not deprived, by reason of insanity, of the capacity to distinguish between right and wrong and the nature and consequences of his actions." He was not present at the staff conference held at Perkins.

No evidence was offered by the defendant denying that he had committed the offenses with which he was charged. Nor was there any evidence that he did not have sufficient capacity to advise as to the conduct of his defense. The sole defense

was rested on the ground that he was insane at the time the various offenses were committed.

In reviewing the evidence before announcing his verdicts, the trial judge—after observing that "the presumption of sanity carries until the defendant raises a serious question as to [his] sanity" and that the lack of unanimity on the part of the hospital staff made it "impossible [for the judge] to give an opinion which would reflect on the condition of the patient"—stated that the opinion expressed by Dr. Gregory was not specific "under the Maryland test for legal insanity," and then found that "the defendant was sane at the time of the commission of the alleged offenses mentioned in the indictments, and that he is sane today."

On appeal, the defendant contends: (i) that there was sufficient evidence to overcome the presumption of sanity; (ii) that once this presumption has been rebutted, the State has the burden of proving sanity beyond a reasonable doubt; and (iii) that the State did not successfully meet the burden cast upon it.

## (i)

In this nonjury case, it was the function of the lower court to evaluate the conflicting evidence on the issue of sanity and to determine whether or not the presumption of sanity had been rebutted. While it is the function of this Court to review both the law and the evidence, we cannot set aside the findings of the lower court on the evidence unless clearly erroneous. *Dunn v. State,* 226 Md. 463, 174 A. 2d 185 (1961); *Saldiveri v. State,* 217 Md. 412, 143 A. 2d 70 (1958); Maryland Rule 886 a.

All of the courts in this country are in agreement that there is a presumption that all persons are sane and responsible for their acts at the time of the commission of a criminal offense. See Weihofen, *Mental Disorder As A Criminal Defense,* p. 214. See also *Saldiveri v. State, supra,* at p. 423. This presumption is a creature of necessity and serves principally to save time in the trial of the issues presented by the pleadings. Otherwise a great deal of time and effort would be wasted if in every case the prosecution had to introduce full evidence of sanity as it does of all other material facts. See the casenote, *Burden*

*of Proof of Insanity in Criminal Cases,* in 15 Md. L. Rev. 157, 160.

This Court has said that "a man is presumed sane until sufficient proof of insanity is introduced to raise a question in the minds of reasonable men as to whether he is or is not sane." *Lipscomb v. State,* 223 Md. 599, 604, 165 A. 2d 918 (1960). The "sufficient proof" necessary to overcome the presumption must be evidence of insanity under the "M'Naghten-Spencer" test. *Saldiveri v. State, supra,* at p. 422. In other words, regardless of who introduces it, it must be shown by sufficient competent evidence that the defendant, at the time of the commission of the offense, did *not* have capacity and reason sufficient to enable him to distinguish between right and wrong and understand the nature and consequences of his acts as applied to himself. *Spencer v. State,* 69 Md. 28, 13 Atl. 809 (1888). Evidence of some undefined mental disorder or instability is insufficient proof to overcome the presumption of sanity. See *Thomas v. State,* 206 Md. 575, 112 A. 2d 913 (1955); *Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955); and *Cole v. State,* 212 Md. 55, 128 A. 2d 437 (1957), wherein this Court rejected the liberal test for ascertaining criminal responsibility applied in *Durham v. United States,* 214 F. 2d 862, 874 (1954), to the effect that an accused is not responsible if his act was the product of a mental disease or mental defect.

In the case at bar, the trial court had before it conflicting evidence on the issue of the defendant's sanity. On the one hand, the hospital report based primarily on the opinion of Dr. Hamilton, and the independent conclusion of Dr. Prado, indicated that the defendant was sane. On the other hand, Dr. Gregory, with whom Dr. Murray was in agreement, was of the opinion that the defendant was insane. It is obvious that the decision the lower court had to make was not an easy one, but we think it was in error when it disregarded the conclusion of Dr. Gregory as to the mental status of the defendant and ruled that the presumption of sanity had not been rebutted. Rule 886 a. Apparently the testimony of Dr. Gregory was not considered because the court believed that he had not been specific as to whether or not he had applied the Maryland test in arriving at the opinion he expressed. As we read it, the record shows that

he had been quite specific. While it is true that Dr. Gregory, in testifying in chief as to the defendant's lack of criminal responsibility, did not use the exact phraseology (nor did Dr. Prado) of the M'Naghten-Spencer test, the court evidently overlooked the fact that the witness, on recross-examination, unequivocally stated that the defendant "was insane under the M'Naghten rule." Having applied the approved test, Dr. Gregory was a competent witness and the lower court should have considered his testimony. We think that the testimony of Dr. Gregory (with which Dr. Murray agreed) was sufficient proof of insanity to raise a doubt in the minds of reasonable men as to the defendant's sanity and thereby overcome the presumption of sanity. *Lipscomb v. State, supra.*

### (ii) and (iii)

Once sufficient proof of insanity has been introduced to overcome the presumption of sanity, there still remains the problem of determining who has the burden of convincing the trier of facts on the issue of insanity. This question has been raised in a number of previous cases, but we have never had to decide it because there was in each of those cases insufficient evidence to rebut the presumption of sanity. See, for example, *Tull v. State,* 230 Md. 596, 188 A. 2d 150 (1963); *Dunn v. State, supra; Lipscomb v. State, supra; Saldiveri v. State, supra; Thomas v. State, supra.* In *Saldiveri,* we said at p. 423 of 217 Md.:

> "[The American jurisdictions] are about evenly divided on the question of who has the burden of proving insanity in criminal cases. Some of the states have ruled that the burden of proof is upon the defendant who pleads insanity, which means that the defendant is required to establish his defense of insanity *by a preponderance of the evidence,* and proof beyond a reasonable doubt is not required. Other states have ruled that the burden is on the prosecution, which means that the defendant is required to produce only enough evidence of a mental disorder to overcome the presumption of sanity, and when this has been done, the State is required to prove sanity *beyond a reasonable doubt."*

512

In order to properly analyze the several tests applied by the courts in specifying the character of the burden of proof it will be salutary to keep in mind that the concept of the burden of proof involves two constituent elements: there is the initial burden of going forward with the evidence and there is also the burden of persuasion. Lindman and McIntyre, *The Mentally Disabled and the Law*, p. 349. The effect of having the burden of persuasion is that, if after all the evidence is presented by both sides, the trier of facts is not persuaded to the requisite degree of certainty of the criminal responsibility or irresponsibility of the defendant, that side which has the burden of persuasion must lose. See *McCormick on Evidence*, §§ 318-322.

Those jurisdictions which take the view that the prosecution has the burden of proving the sanity of the accused assert that the fundamental rule of law requiring the State to prove the guilt of a defendant beyond a reasonable doubt should logically extend to the issue of criminal responsibility. The reasoning is that since the basic elements of a criminal offense (except those which are *malum prohibitum*) are the act itself and the *mens rea* or intent to commit it, it is necessary, in order to prove the intent, to show that the perpetrator was capable of forming the requisite intent. In other words, it must be shown that the perpetrator was sane or else he could not have had the intent to commit the offense charged. These jurisdictions hold that proving the sanity of the defendant, once it has been brought into issue, is an essential element of the offense; and that since the State has the burden of proving all the elements thereof, it must necessarily have the burden of producing evidence and the burden of persuasion on the issue of insanity, despite the fact that, at the outset, the presumption of sanity places the initial burden of producing evidence on the defendant. But once the presumption has been rebutted it disappears as a rule of law and has no probative value as evidence. See Thayer, *A Preliminary Treatise on Evidence at the Common Law*, p. 576. When this takes place, the burden of producing evidence as well as persuading the trier of facts falls upon the State and it must then prove sanity beyond a reasonable doubt as it must do in proving all other elements of the crime.[1]

---

1. For analyses of the propositions stated in this "reasonable

The opposing view, which places the burden of proof on the defendant, treats the issue of criminal responsibility as an affirmative defense to be established by the defendant, rather than as an element of the criminal offense to be proved as a part of the State's case. The courts adhering to this view assert that although *mens rea* cannot exist without sanity, it is a preexisting fact inferable from general experience that the vast majority of men are rational beings; that, accordingly, the presumption of sanity is an inference of fact from which the trier of facts can draw conclusions of fact, rather than a legal presumption, and operates to place the entire burden of proof (*i.e.,* the burden of producing evidence and the burden of persuasion) on the defendant; and that the burden prevails until the defendant has shown the trier of facts by a preponderance of all the evidence, taking into account the presumption of sanity, that the defendant is insane.[2]

Our analysis of the two prevailing tests [3] leads us to believe that the "reasonable doubt" test is more logical than the "preponderance of evidence" test. Instead of being an inference of fact from which conclusions of fact may be drawn, we consider the presumption of sanity to be a legal presumption which prevails only until sufficient proof of insanity has been introduced, in which event the burden of proof shifts to the State to prove its case against the defendant beyond a reasonable doubt. *Thomas v. State, supra.* And see *Lipscomb v. State, supra.* Difficult problems relating to the protection of society and of a defendant who is acquitted on the ground of insanity are met

---

doubt" test, see Weihofen, *Mental Disorder As A Criminal Defense,* pp. 241-272; 15 Md.L.Rev. 157. See also Lindman and McIntyre, *The Mentally Disabled and the Law,* pp. 349-351; Wigmore, *Evidence* (3rd ed.), §§ 2485-2488, 2501; *Underhill's Criminal Evidence* (5th ed.), §§ 452, 453; 48 Iowa L. Rev. 165; 112 Un.Pa.L.Rev. 733.

2. For analyses of the propositions stated in the "preponderance of evidence" test, see the texts and law review articles referred to in fn. 1.

3. There is a proposed third view which would assign the burden of persuasion to the prosecution but would reduce the weight of the burden by requiring only proof by a preponderance of the evidence rather than beyond a reasonable doubt. See Lindman and McIntyre, *The Mentally Disabled and the Law,* p. 351.

by § 8(b) of Article 59 which was added to the Code of 1957 by Ch. 43 of the Laws of 1963. This provides for the test of danger to society or to himself, rather than of criminal responsibility, in determining whether the defendant should be released.[4]

In reaching this conclusion we are not unmindful that we have consistently held that a defendant need not establish self-defense beyond a reasonable doubt and that proof thereof by a preponderance of the evidence is all that is required. *Gunther v. State,* 228 Md. 404, 179 A. 2d 880 (1962). See also *Perry v. State,* 234 Md. 48, 197 A. 2d 833 (1964). But we see no reason why we should adopt a like rule with respect to the plea of insanity. Self-defense is an affirmative defense which a defendant has the burden of establishing, whereas insanity involves the *mens rea* or intent which is an essential element of the offense which the State must prove.

While the lower court found that the defendant was sane at the times he committed the offenses with which he was charged, the record does not disclose whether it applied the "reasonable doubt" or the "preponderance of evidence" test in arriving at its findings of guilty as charged. We shall therefore remand the case without affirmance or reversal pursuant to Rule 871 for such further proceedings as may be necessary to indicate which test was applied.

> *Case remanded without affirmance or reversal for such further proceedings as may be necessary to comply with the requirements of this opinion.*

---

4. The text of § 8(b) is as follows: "A person who has been *found not guilty of any crime or offense by reason of insanity, in* the discretion of the court, may be committed to one of the appropriate mental hospitals of the State for examination and evaluation to determine whether or not, by reason of mental disease or defect, the person is a danger to himself or to his own safety, or will be a menace to the safety of the person or property of others. He shall be released forthwith upon a negative finding by such hospital, and in any event shall, at any time after three months from the date of such confinement, have the right to apply for his release pursuant to the provisions of § 21 [of Article 59 of the Code of 1957]."

HENDERSON, J., filed the following dissenting opinion, in which SYBERT, J., concurred.

The majority opinion in this case decides a point, left open in previous opinions, in a manner that I believe to be unwise, and I must respectfully dissent. The most that can be said of the evidence presented by the appellant in support of his plea of insanity at the time of the commission of the alleged offense, is that it showed that one or two of the younger psychiatrists upon the staff at Perkins differed from the senior psychiatrists and other staff members, and felt that the accused was probably insane under the M'Naghten test.

Even this testimony was somewhat shaken by the fact that Dr. Gregory, the only witness called by the appellant, stated his belief that the accused was "unable to distinguish right from wrong and *adhere to the right.*" (Italics supplied) This suggests "irresistible impulse," a defense not open under the M'Naghten test, but I find no basis for the statement in the majority opinion that the trial court did not consider his testimony. Indeed, Judge Grady carefully analyzed it, although rejecting it in the end. Dr. Prado, called by the State, testified that the accused was not medically or legally insane. I am unable to conclude that the judgment of the trial court was clearly erroneous under Rules 886, and 772. Under Rule 742 the trial court may render its verdict without comment, and it does not appear that any question as to the burden of proof was raised or decided in the court below as required by Rule 885.

My chief objection, however, is to the holding that upon the presentation of evidence tending to show insanity the burden of proving sanity shifted to the State, to be established beyond a reasonable doubt. To my mind the opinion misreads *Lipscomb v. State,* 223 Md. 599, 604. In that case Chief Judge Brune, for the Court, stated that a person is presumed sane "until sufficient proof of his insanity is introduced to raise a question in the minds of reasonable men as to whether he is or is not sane." If the defense does not produce evidence legally sufficient to establish insanity, the issue should be withdrawn from the jury. *O'Connor v. State,* 234 Md. 459, and cases cited. But it does not follow that wherever sufficient evidence is produced

to overcome the presumption, the burden shifts to the State. In *Lipscomb* Chief Judge Brune said that once the presumption of sanity is overcome "a further question then arises, on which there is a division of authority, as to whether the defendant must go forward and prove his insanity by a preponderance of the evidence, or whether the State must then offer proof to establish the defendant's sanity beyond a reasonable doubt." Because the "threshhold" question was not raised, "the problem of determining which party must bear the burden of proof on the insanity issue is not reached * * *."

If we must here make a choice, I am in favor of the view that requires the accused to establish insanity by a fair preponderance of the evidence. In 9 Wigmore, *Evidence* (3rd ed.), sec. 2501, the learned author states that three different rules have found vogue. He describes the third in the following language: "(3) But another view, based on judicial experience in dealing with the issue of insanity in criminal trials, and adopted by an increasing number of Courts, is that the *accused has the burden* of proving insanity, in the sense that he has the risk of persuading the jury to that effect, at least by a preponderance of evidence, and also, of course, has the duty of producing evidence." In support of the third view, the preeminent author quotes from the opinion of Douglas, J. in *State v. Quigley*, 26 R. I. 263, 58 Atl. 905, which he characterizes as "good":

> "The question was settled in England in 1843 by the answer of the judges to questions propounded by the House of Lords, suggested by the case of Daniel M'Naghten, reported in 10 Cl. & Fin. 200. In that case the law was said to be: 'That if the accused was conscious that the act was one which he ought not to do; and if the act was at the same time contrary to law, he is punishable. In all cases of this kind the jurors ought to be told that every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crime until the contrary be proved to their satisfaction; and that to establish a defence on the ground of insanity, it must be clearly proved that at the time of committing the act the party

was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing or as not to know that what he was doing was wrong.'

\* \* \*

"The question has arisen in almost every State of the Union, and in the courts of the United States, and between the decisions of these courts there is a hopeless conflict.

\* \* \*

"It would be a fruitless task to review in detail the cases where the question has been considered, for they are divided into two classes which follow substantially the same two divergent lines of reasoning.

"The English rule implies that the question of guilt and the question of insanity raise two distinct issues, and that while both may be involved in the final verdict, the burden of proof upon each issue lies upon different parties. The most complete and forcible statement of the argument in support of this rule which we have found is contained in the opinion of Judge Danforth in *State v. Lawrence,* 57 Me. 574, 581.

"The American rule, so-called, holds that in a criminal case there is but one issue and that the burden throughout is upon the prosecution to prove, not only the criminal act, but the capacity of the accused to commit it beyond a reasonable doubt.

"We think the first of these positions is the more logical. Sanity is not an ingredient of crime. It is a condition precedent of all intelligent action, as well benevolent as nefarious. It is a quality of the actor, not an element of the act. It is incumbent upon the prosecution to show the commission of the act, and from this showing and its circumstances to sustain the inferences of malice and such emotions as the particular crime may include. But sanity is not one of these inferences. It is a pre-existing fact which may be taken for granted as implied by law and general experience. \* \* \*.

"It is argued that criminal intent, malice, and premeditation are facts to be proven by the prosecutor; that these can not exist in an insane mind; hence sanity must be proved by the prosecutor. But these are facts of mental condition and action, and they can only be proved by inference from material facts, circumstances, and acts. It is incumbent, therefore, upon the prosecution to prove such material facts, circumstances, and acts as would compel the inference of guilt in a sane person, and this is the limit of his burden.

"In murder the prosecution must establish the act, and either by inference or additional evidence, malice, and premeditation. If these ingredients of the crime can not exist without sanity, sanity is presumed. All the ingredients of the crime must be proved, and as to these we agree the burden never shifts; but as to sanity it never attaches to the prosecutor. The plea of not guilty by itself does not put the sanity of the accused in issue. He must raise the question otherwise, as all agree, if not by special plea, at least by introducing evidence, and this is confession and avoidance."

We adopted the M'Naghten rule in this State in *Spencer v. State,* 69 Md. 28, 37, 13 Atl. 809, in an opinion by Alvey, C.J. and have followed it consistently ever since. The expressions "clearly proved" or proved to the "satisfaction" of the jury, used in *M'Naghten's* case, may import a degree of proof higher that a preponderance, but most courts now state the rule in terms of a preponderance of the evidence. See Weihofen, *Mental Disorder as a Criminal Defense,* p. 219 *et seq.* Perhaps the latest English case on the subject is *R. v. Podola,* [1959] 3 All E. R. 418, 429 (C. Cr. A.). If we are to continue to follow the M'Naghten rule in its pristine form I see no reason to reject the portion of it that deals with the burden of proof. It has been the practice in some of the trial courts to instruct on the basis of the preponderance of evidence and the burden on the defense. See for example, the charge of Chief Judge Niles in *Thomas v. State,* 206 Md. 575, 587, Judge Macgill in *Bell v. State,* 234 Md. 254, and Judge Grady in *O'Connor v. State,*

*supra.* In 2 Wharton, *Criminal Evidence* (11th ed.), sec. 899, the learned author makes the point that a statutory plea of insanity is nearer to a plea to the jurisdiction than confession and avoidance. Nevertheless, when offered to show "entire unamenability" he suggests that it should be established by "at least a preponderance of proof," particularly where it may form the basis for commitment to a mental institution.[1]

The rule that the burden shifts to the State was laid down for the Federal Courts in *Davis v. United States,* 160 U. S. 469, but it was made clear in *Leland v. Oregon,* 343 U. S. 790, that this was not applicable to the States through the Fourteenth Amendment. The State courts are almost evenly divided on the point. There seems to be no particular trend, although a late case in Alaska, *Chase v. State,* 369 P. 2d 997, 1003 (1962), adopted the preponderance rule. Some of the cases that reject the preponderance rule also reject the M'Naghten rule. Statutes control the matter in some states. As stated in the recent article by Koller, on *The Insanity Defense,* 112 U. Pa. L. Rev. 733, 741 (March 1964), twenty-three states place the burden of proving insanity on the accused. The author continues: "Allocating the risk of error to the defendant in this situation is not unfair since he is attempting to refute the ordinary presumption of sanity and may therefore have to establish any circumstances entitling him to exculpation."

It is probably true, as some commentators point out, that the

---

1. We recently held in Rowe v. State, 234 Md. 295, that the same test of criminal responsibility was applicable in the case of a plea of insanity at the time of trial (insane now), as in the case of a plea of insanity at the time of the commission of the alleged offense (insane then). We further held that a verdict of insane now nullified the trial, so far as the guilty verdict was concerned, and required that the accused be committed to a mental hospital until capable of standing trial again, I submit that a verdict of insane then or insane now, under the holding in the instant case, could not support a commitment to a mental institution, for it would not amount to a finding of insanity, but only a finding that the State had failed to established sanity beyond a reasonable doubt. It would seem to follow that under either verdict (insane then or insane now) the accused would be entitled to immediate release.

presumption of sanity, viewed simply as a rule of evidence, disappears when evidence to the contrary is produced, but placing the onus on the accused, to establish his unaccountability by a preponderance of all the evidence is also a matter of policy, implicit in the M'Naghten rule. In short, the accused should bear the risk of persuasion when all the evidence is in, as in other cases where he asserts an affirmative defense.[2] To acquit a defendant simply because a doubt is raised as to his sanity is to relax the fundamental concept of criminal responsibility. I would adhere to the English rule.

Judge Sybert authorizes me to say that he concurs in the views here expressed.

---

2. The decision in the instant case is inconsistent with our holding that the burden does not shift in a defense of self-defense, but that the burden is upon the proponent to establish his affirmative defense by a preponderance of the evidence. The majority opinion recognizes that this is the Maryland rule in self-defense, *Gunther v. State,* 228 Md. 404, but attempts to distinguish it on the ground that the insanity plea raises an issue of *mens rea* or criminal intent, while self-defense does not. The distinction is untenable. There is a split of authority as to the burden of proof in self-defense, just as there is in insanity cases. See Comment, *The Burden of Proving Self-Defense in Homicide Cases,* 39 J. Crim. L. & Crimin. 183. But the cases holding that the burden shifts to the State do so, expressly or impliedly, on the theory that any evidence of self-defense negates the criminal intent, although there is no presumption to overcome, and thus shifts the burden. See casenote, 24 Md. L. Rev. 78, 81-83. Both defenses relate to the state of mind, and the result in *Gunther* should compel a similar result in the case at bar.