**Fortunat J. MICHAUD**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

March 11, 1970.

**822**

Charles W. Smith, Saco, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

POMEROY, Justice.

For decision is an appeal from the denial of a Petition for Writ of Habeas Corpus post-conviction.

Fortunat Michaud, the Petitioner, is now serving a life sentence in the Maine State Prison after having been convicted of the crime of murder in the Superior Court in York County on October 26, 1955. Prior to the trial he was examined by a psychiatrist at the Augusta State Hospital.

At the trial, the psychiatrist, Dr. Sleeper, testified concerning a confession of the crime made to him by the Petitioner. When on direct examination Dr. Sleeper was first asked concerning what were characterized as admissions, objection was entered by Petitioner's then counsel. The Court thereupon conducted a hearing in the absence of the jury. After a conference in Chambers, the subject of which does not appear in the record, the Presiding Justice permitted the testimony to be given in the presence of the jury. No objection was at this time entered by Petitioner's attorney.

On cross-examination Petitioner's counsel, through questions asked of Dr. Sleeper, explored the contents of the statement given by Petitioner to Dr. Sleeper at great length. His obvious purpose was to bring out as much of the bizarre story as possible

in support of the plea that Michaud was *not guilty by reason of insanity*.

After his conviction in 1955, a Petition for Habeas Corpus post-conviction was denied in 1965. Michaud v. State of Maine, 161 Me. 517, 215 A.2d 87. The issue here raised was not raised in the prior Petition and could not have been.

The Petitioner says he is entitled to a new trial because the State was permitted to use the testimony of Dr. Sleeper to whom Michaud made a complete confession of the crime for which he was convicted.

The primary question becomes: Is State v. Hathaway, 161 Me. 255, 211 A.2d 558 (1965), to be given retrospective application?

In State v. Knight, 95 Me. 467, 50 A. 276, 55 L.R.A. 373, this Court reaffirmed the rule described in State v. Lawrence, 57 Me. 574 (1870). Thus, it is clear that at least since 1870 Maine has been a "M'Naghten's Rule" state. M'Naghten's case, House of Lords, 1843, 10 Clark & Finnelly Reports, 200.

Public Law 1961, c. 310, was a Legislative enactment of a rule substantially as described in Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L. R.2d 1430 (1954).

Public Law 1961, c. 310, was repealed by Public Law 1963, c. 311, § 2, and reenacted by Public Law 1963, c. 311, § 3, as Revised Statutes 1954, c. 149, § 17-B.

The statute as finally enacted (15 M. R.S.A. § 102), reads as follows:

"An accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect. The terms 'mental disease' or 'mental defect' do not include an abnormality manifested only by repeated criminal conduct or excessive use of drugs or alcohol."

In a well-reasoned opinion the Presiding Justice, from whose decision this appeal

was taken, ruled that *Hathaway* should be given prospective application only. His ratiocination was that the occasion for the rule in *Hathaway* was not present when *M'Naghten* was the law of Maine.

Because 15 M.R.S.A. § 102 requires the alienist to direct his inquiry not only to determine the existence of a mental disease or defect, but also to ascertain whether or not the unlawful act was the product of the mental disease or defect, the *Hathaway* rule was necessary.

Dr. Saunders, the State psychiatrist, had testified in *Hathaway*, it would be impossible to determine if the mental disease or defect was the cause of the unlawful act unless he was permitted to inquire into the circumstances of the commission of the act. A decision to the effect that the alienist would no longer be permitted to disclose admissions made to him by the patient was needed to free the alienist's examination of the inhibitions which would likely result if a contrary rule were adopted.

The language of the Presiding Justice, explaining the rationale of his decision, was as follows:

"A threshold question, in my view decisive, is whether or not Hathaway is to be applied retroactively. We are not here dealing with admissions which are so obtained as to be inherently untrustworthy. There was no inducement or constraint involved and the admissions met all traditional standards of voluntariness. The reason for announcing a new rule in Hathaway was clearly stated therein. The Court pointed out that the public is as much concerned with relieving the mentally ill from criminal responsibility as the respondent may be to establish his defense. The patient must be able safely to communicate fully and candidly with the examining physician. The so-called Durham Rule statute, 15 M.R.S.A., Sec. 102, requires determination that the crime was the *'product'* of mental disease or defect and this in turn requires the examiner to inquire into the circumstances of the crime itself. This was not the case under the old M'Naghten Rule which controlled when Michaud was tried and until 1963 when the Durham Rule was enacted. With such a requirement imposed by the Durham Rule, Hathaway sought to resolve the dilemma facing a counsel for a respondent who must choose between defending on the merits and defending by a showing of causative mental illness, the latter choice requiring a full disclosure by the respondent to the examining physician of the events of the crime. The very reasons for the Hathaway rule, however, lend themselves only to a prospective application. The purpose was to improve the efficacy of mental examinations of persons charged with crime by removing roadblocks which might impede such an examination.

"In Nadeau v. State (1967) 232 A.2d (Me.) 82, 85 the Law Court carefully reviewed the decisions governing retroactivity. It noted that the right to counsel cases have been applied retrospectively whereas the so-called Escobedo and Miranda rules involving confessions and admissions have not. It examined the criteria set forth in Stovall v. Denno (1967) 388 U.S. 293, 87 S.Ct. 1967 [18 L.Ed.2d 1199]. The court must consider the purpose to be served by the new standards, the extent of the reliance by law enforcement authorities on the old standards, and the effect on the administration of justice of a retroactive application of the new standards. In the light of these criteria it is clear that Hathaway should be given only prospective application."

We adopt the reasoning and the language of the Presiding Justice as the reasoning and language of this Court. This being so, it is unnecessary to discuss any of the other points raised by the Petition and answer thereto.

The entry must be,

Appeal denied.

WEBBER, J., did not sit.