# WILLIAM SMITH MAHONEY *v.* STATE OF MARYLAND

[No. 59, September Term, 1969.]

*Decided October 16, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*John T. Bell* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County,* and *Barry H. Helfand, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

An indictment was returned against the appellant

charging him with robbery with a deadly weapon.[1] He filed a written plea that (1) "he was insane at the time of the commission of the alleged offense;" (2) "he is insane now;" (3) "he is not guilty." It was ordered by the Circuit Court for Montgomery County on 7 February 1968 that the Department of Mental Hygiene make an examination of his mental condition pursuant to Md. Code, Art. 59, §§ 9 and 11. He received "a comprehensive psychiatric evaluation with psychological testing, social service investigation, electroencephalography and other pertinent clinical and laboratory studies" at the Clifton T. Perkins State Hospital. A report of the examination was filed with the court on 24 April 1968. The opinion of the medical staff, with the exception of Dr. Ian Mackay, who did not express an opinion as to competency to stand trial, was that the appellant was "currently able to understand the nature and object of the proceedings against him and to assist in his defense." It was also the opinion of the members of the medical staff that the appellant "did not lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law at the time of the alleged offense." The case came on for trial in the Circuit Court for Montgomery County on 22 October 1968 before a jury. The transcript of the proceedings discloses that the jury rendered their verdict on 23 October but does not show what the verdict was. The docket entries read: "Verdict: Sane and Guilty as to defendant, Will S. Mahoney." A 20 year sentence was imposed to "begin on the 8th day of December 1967."

The sole contention on appeal is that a motion for judgment of acquittal made at the close of all the evidence was improperly denied. However, the argument in support of the contention goes only to the issue of insanity at the time of the commission of the offense. There is no claim that the evidence was not sufficient to prove the *corpus delicti* of the offense and that the appellant

---

1. The indictment contained six other related counts which were "abandoned" by the State prior to trial.

committed it. Nor does the appellant argue that he was not competent to stand trial and the record does not disclose that any objection was made below when the case came on for trial.

Chapter 709, Acts of 1967, repealed §§ 7-12 of Md. Code, Art. 59. It enacted new §§ 7-12 in lieu thereof and made their provisions applicable to all cases tried after 1 June 1967. New §§ 7-12 are thus applicable to the instant case. In *Strawderman v. State,* 4 Md. App. 689, we set out the test for responsibility for criminal conduct to be applied under the new law and the procedure to be followed. We concluded, at p. 698:

> "So when a plea has been filed in writing alleging that the accused was insane at the time of the commission of the alleged crime, the court should determine preliminarily whether the proof adduced in support thereof is sufficient to raise a doubt as to the sanity of the accused, as defined, in the minds of reasonable men. If it finds that it is not, the State has no further burden with respect thereto and, in a jury trial, the question is not submitted to the jury. If the court finds that the proof adduced was sufficient to surmount the threshold question of doubt as to the accused's responsibility, the State has the burden of convincing the trier of facts that the accused was sane, and, in a jury trial, evidence on the issue should then be introduced before the jury with proper instructions."

We noted that in a jury trial evidence with respect to the preliminary determination of the court should be presented out of the presence of the jury.

In the instant case, in the presence of the jury, the State adduced proof of the *corpus delicti* and the identity of the appellant as the perpetrator of the crime and rested.[2] The defense called Donald A. Celaschi, employed

2. At this point the appellant moved for judgment of acquittal "on general grounds for the record." It was denied.

as a supervisor of appraisal and placement in special education by the Montgomery County Public Schools. He testified that the appellant in 1963 had been "judged by school personnel to be a mentally retarded youngster and therefore needed a program other than the regular program offered. So on this basis we placed him in special education." He explained that "mentally retarded" is a "category that the criteria basically is one of I.Q. which ranges in this case between 50 and 75, a youngster who is far off the normal curve, where he is at least two or more years behind in his academic work." In 1961 the appellant "scored an I.Q. of 72 on an individual standardized test." On cross-examination he stated that he was not expressing an opinion as to the appellant's legal capacity to commit a crime nor did any of his testimony go to that issue.

Dr. Charles Hrissikopoulos, a psychiatrist, testified for the defense. He had been called on 20 July 1968 by one of the nurses at Holy Cross Hospital, at the request of the police, to examine the appellant, who was in bed under restraint. The appellant indicated he had attempted suicide because the police "had been too mean to him." Dr. Hrissikopoulos examined him and formed the opinion that he "was somewhat mentally retarded, quite definitely; that his behavior was inappropriate, that is he should not have cut himself for what he claimed occurred before then; and that also he was somewhat depressed." The doctor said that a person who is mentally retarded is "one who is not able to learn as well as another so-called normal individual." The ability to learn is variable as to the individual. He classified "mental retardation" as a mental disease or defect. On cross-examination it was elicited that the doctor did not know the Maryland test for responsibility for criminal conduct.

Dr. Ian Mackay, staff physician and staff psychiatrist at Clifton T. Perkins State Hospital testified for the defense. He explained the procedure followed when an accused is referred to the hospital for evaluation. He found that the appellant was retarded. The appellant had a

scholastic evaluation, a part of which was the Wechsler Adult Intelligence Scale, and an intelligence quotient test. "The result was 48. Average is 95 to 105." He was asked if a person with this type of I.Q. could be responsible under the Maryland law for his criminal conduct. He replied, "Generally speaking not, in my opinion, not all, not any circumstances. Generally not at all, generally speaking * * * Because he hasn't got the ability in my opinion to relate the norms of social behavior, socially accepted consideration for the needs and wants of others, sense of behavior as far as others are concerned. His whole attempt to adjust to life is like building a house on quicksand. I think that is a very good analogy, in my opinion." His conclusion was that the appellant was not criminally responsible for the crime he was alleged to have committed. On cross-examination it was adduced that it was the opinion of five doctors on the staff that the appellant was criminally responsible, one had some doubts about his competence, but agreed with the majority, and one, Dr. Mackay felt otherwise. The appellant offered by stipulation, that if two named doctors were present, they would testify that they treated the appellant "for attempts on his life by cutting his arms." He then rested.

The State called Dr. James A. Addison, staff psychiatrist at Clifton T. Perkins State Hospital. He said, "I did a complete psychiatric case workup on [the appellant] psychiatrically and of course the other tests that include the psychiatric evaluation in accordance with the court order were done. He had social history, psychologicals, he had brainwaves, he had physical examinations, he had routine blood work. And he had ward observation from the time he was there to 9-68—2/9/68 to 9/26/68—when he was discharged from our hospital." He was presented to a staff conference for an opinion on 28 April 1968. "Present there was Dr. Pastor, who is the chief consultant for the penal system; Dr. Reiner, clinical director; Dr. Sauer, who is now, at this time, recently been appointed acting clinical director; myself,

Dr. Fisher, Dr. Mackay, Dr. Adano. And then also present were several others who did ancillary work on him; Miss Tillery and Mrs. Anderson, social worker and psychologist." With the exception of Dr. Mackay, the others agreed with the opinion of Dr. Addison. Dr. Addison's opinion was that "as of today and of course at the time that [the appellant] was on the ward last, * * * that he is able to understand the nature and object of the proceedings against him and to cooperate in his own defense; and at the time of the last offense, it was our opinion that he did not have a mental illness of such a nature to cause him to lack substantial capacity to appreciate the criminality of his acts or to conform his acts to the requirements of the law." The report of the examination of the appellant sent to the court by the superintendent of Clifton T. Perkins State Hospital was admitted without objection.

Out of the presence of the jury the appellant moved for judgment of acquittal on the ground the evidence was not sufficient to show either his guilt or his criminal responsibility. It was denied. The court gave a comprehensive charge to the jury which included instructions as to insanity. It explained the presumption of sanity and how the presumption is initially overcome by evidence of insanity, leaving to the jury to determine on the conflicting evidence before it whether or not the appellant was sane beyond a reasonable doubt. It read the statute pertaining to responsibility for criminal conduct and directed the jury to render a special verdict as to insanity. There was no objection to the charge or request for additional instructions.

The appellant claims on appeal that he is entitled to have the judgment set aside because there was no preliminary finding by the trial court that there had been offered proof of insanity sufficient to overcome the initial presumption of sanity. It is correct that the court did not follow the preferable procedure. All the evidence on the issue was received in the presence of the jury and the court did not make a decision preliminarily, out of

the jury's presence, that evidence was sufficient to surmount the threshold question of doubt as to the appellant's responsibility. But the appellant was in no way prejudiced thereby. It is clear that on the evidence adduced the initial presumption of sanity was rebutted to the extent that the sanity *vel non* of the appellant was properly a question for the jury to determine. The issue was submitted to them with appropriate instructions and they did determine it. Thus that the evidence was received in the first instance in the presence of the jury and without a preliminary finding by the court that they were entitled to receive it cannot be said to be prejudicial error compelling reversal. We see nothing in *Turner v. State*, 5 Md. App. 584, where a special verdict as to sanity was not rendered by the court as the trier of fact, which requires a finding to the contrary.

Nor is there any merit to the appellant's claim that the evidence was not sufficient for the jury to find, beyond a reasonable doubt, that he was sane at the time of the commission of the offense. The testimony of Dr. Addison and the hospital report were ample to support the verdict that he was sane. It was the function of the jury to resolve the conflicting evidence on the issue and the weight to be given it was a matter for them.

We hold that the lower court did not err in denying the motion for judgment of acquittal made at the close of all the evidence.

*Judgment affirmed.*