514 A.2d 29

**Bernard A. CURTIS**

v.

**STATE of Maryland.**

**No. 924, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Sept. 5, 1986.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender and George E. Burns, Jr., Asst. Public Defender, on brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Peter M. Semel, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Argued before BLOOM, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

The appellant, Bernard A. Curtis, was convicted on April 9, 1980, by a jury in the Criminal Court of Baltimore, of first degree felony murder, use of a handgun in that crime, and transporting a handgun. After being sentenced for those crimes, he appealed. In a December 1, 1981, unreported opinion, this Court reversed the judgments against the appellant, holding that the trial judge had improvidently permitted the appellant to withdraw his insanity plea prior to trial. We there held that since the evidence of the mental state of the appellant was sufficient to raise a doubt as to his sanity at the time of the offenses, the trial judge should have ordered his examination pursuant to former Md. Code (1957, 1979 Repl. Vol.), Art. 59, § 25, before permitting the appellant, over the objection of his counsel, to withdraw his plea of insanity. We remanded the case for a new trial with a direction to the trial court to reinstate the appellant's plea of not guilty by reason of insanity. *Curtis v. State*, No. 480, September Term, 1981, *per curiam.*

The appellant was retried before a jury in the Circuit Court for Baltimore City on November 7 and 8, 1984. At

the close of the evidence, the appellant made a motion for an acquittal by reason of insanity. The appellant based that motion on the uncontradicted expert opinion evidence before the court and jury that at the time of the offense the appellant was suffering from a mental disorder which caused him to lack substantial capacity to appreciate the criminality of his conduct and to conform that conduct to the requirements of law. The motion was denied.

He was found guilty of felony murder, robbery with a deadly weapon, and use of a handgun in the commission of a crime of violence. The jury also found that he was sane at the time of the commission of the offenses. On December 12, 1984, the trial court, after merging the robbery and the felony murder convictions, sentenced the appellant to a term of life imprisonment for first degree murder and to a consecutive 15 year term of imprisonment on the handgun conviction.

## The Facts

On November 16, 1979, Allen C. Brooks, proprietor of Brooks Construction Company, located at 4808 Liberty Heights Avenue in Baltimore City, was shot to death at that location. At 5:38 p.m. that same day, Officer Charles Busse of the Baltimore City Police Department, along with fellow officers, responded to a call of robbery-in-progress at Brooks Construction Company.

On his arrival, Officer Busse was told by Howard Bond and Thomas Voss, employees of the victim's company, that they had earlier heard the appellant threaten the victim. The two men had been waiting for Brooks outside of his Liberty Heights office so that they might be paid when Brooks arrived. As the two waited, the appellant, who also worked for Brooks, arrived to receive his wages. The appellant displayed a handgun and said something to the effect that he was going to rob the victim. Apparently, Bond and Voss did not take the appellant's threat seriously. When Brooks arrived, he went into his office while the appellant, Bond, and Voss waited in an outer office. Voss

was the first to go in to see Brooks. After Voss was paid, it was the appellant's turn. Bond and Voss could hear the appellant and Brooks arguing before the appellant came out, putting money into his pocket. The appellant again told the men that he was going to rob Brooks, and again the appellant pulled out a handgun. This time Bond and Voss became alarmed, and they decided to get out of the building and call the police. As they were leaving they saw the appellant go back into Brooks's office. Bond testified that "Mr. Brooks was still sitting in the chair and [the appellant] said something about giving him money or he was going to blow his head off." When Voss and Bond returned after calling the police, they found Brooks, who had been shot in the chest, unconscious on the floor of his office.

The appellant seeks reversal of his convictions and sentences, contending:

    I.  The evidence was insufficient to sustain the finding of sanity (criminal responsibility); and

    II.  The evidence was insufficient to sustain the conviction.

## I.

The General Assembly, by Chapter 501 of the Acts of 1984, substantially modified the law governing procedures applicable to the insanity defense in criminal cases. Section 1 of that Act repealed Title 12 of the Health-General Article of the Code (1982)[1] entitled "Incompetency and Insanity in Criminal Cases." Section 2 of the Act enacted present §§ 12–101—12–121 of the Code, *supra,* under the title heading "Title 12. Incompetency and Criminal Responsibility in Criminal Cases." One significant impact upon the insanity defense wrought by Chapter 501 of the Acts of 1984 was to shift the burden of proof of a lack of criminal responsibility by reason of insanity from the prosecution to the defense.

---

1. This title of the new Health-General Article, a product of Code Revision, recodified Md. Code (1957, 1979 Repl.Vol.), Article 59, §§ 23 through 28, entitled "Insanity as a Defense in Criminal Cases."

Md. Code (1982, 1985 Supp.), § 12–109 of the Health-General Article. This important change in procedure, however, was inapplicable to the trial of the case *sub judice* since Section 4 of Chapter 501 of the Acts of 1984 provides:

[T]he provisions of this act shall be applicable to any case filed on or after the effective date of this Act [July 1, 1984] and to any individual found not criminally responsible by reason of insanity or determined to be incompetent to stand trial who is under commitment to the Department of Health and Mental Hygiene on or after the effective date of this Act [July 1, 1984]; except that the initial commitment of an individual found to have been insane at the time of the commission of the criminal act under the law in effect before the effective date of this Act [July 1, 1984] shall be governed by former §§ 12–110 through and including 12–113 of the Health-General Article as those sections applied on June 30, 1984.

Under the law in effect on the date of the offenses of which the appellant was convicted as well as on the date that he was indicted for those crimes, once a defendant, who had pleaded that he was insane at the time of the commission of an alleged crime, produced sufficient evidence to raise a doubt as to his sanity in the minds of reasonable men, the prosecution then bore the burden of proof beyond a reasonable doubt that the defendant was sane. *Bradford v. State*, 234 Md. 505, 200 A.2d 150 (1964); *Bremer v. State*, 18 Md.App. 291, 307 A.2d 503, *cert. denied*, 269 Md. 755 (1973), *cert. denied*, 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974); *Strawderman v. State*, 4 Md.App. 689, 244 A.2d 888 (1968), *cert. denied*, 252 Md. 733 (1969). The test of his sanity was stated in Md. Code (1957, 1979 Repl. Vol.), Art. 59, § 25(a):

A defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disorder, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his

conduct to the requirements of law. As used in this section, the terms "mental disorder" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.[2]

Thus, the defense of insanity had to be generated by the appellant by presentation of evidence sufficient to overcome the presumption of sanity during the commission of a crime which automatically attached to every criminal defendant. *Lipscomb v. State*, 223 Md. 599, 604, 165 A.2d 918 (1960); *Hawkins v. State*, 34 Md.App. 82, 90, 366 A.2d 421 (1976), *cert. denied*, 279 Md. 683 (1977); *Van Meter v. State*, 30 Md.App. 406, 412, 352 A.2d 850 (1976). Once the threshold question of doubt as to the appellant's responsibility was surmounted, the burden of production and persuasion was then cast upon the State to prove the appellant sane beyond a reasonable doubt as a necessary element of the prosecution's case. *Bradford v. State, supra; Riggleman v. State*, 33 Md.App. 344, 364 A.2d 1159 (1976). At that point the presumption of sanity of the appellant which had previously existed disappeared, and it no longer had any probative value as evidence. *Bradford v. State*, 234 Md. at 512, 200 A.2d 150; *Evans v. State*, 28 Md.App. 640, 727, 349 A.2d 300 (1975), *aff'd*, 278 Md. 197, 362 A.2d 629 (1976). The principal issue in this appeal is whether the State met that burden.

The only scientific evidence relating to the appellant's sanity was the testimony of Dr. Jacques Clermont, the Clinical Director at Clifton T. Perkins Hospital in Jessup, Maryland, and the record from that hospital reflecting the unanimous opinion of three physicians and one psychologist that the appellant suffered, at the time of the offense, from schizophrenia, paranoid type, which prevented him from having "substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law." This evidence was offered by the appellant.

---

2. That test has been retained in Md. Code (1982, 1985 Supp.), § 12–108 of the Health-General Article.

The sum and substance of the State's case on the issue of the appellant's mental condition at the time of the offense consisted of the testimony of two of the victim's employees that they saw the appellant immediately prior to and after the shooting, the testimony of Robert Randolph, who happened to be in the area after the shooting and who, by chance, came into contact with the appellant, and of the testimony of Detective Sergeant Landsman who described the crime scene and the appellant's car. The first three of these witnesses testified that at the time of the offense the appellant appeared to be under the influence of alcohol and was not acting normally. Other than those observations, none of these witnesses offered any lay opinion or lay conclusion as to the appellant's mental state at the time. *Cf. State v. Conn,* 286 Md. 406, 408 A.2d 700 (1979).

The State, in fact, came close to conceding the issue of the appellant's insanity. In the State's opening argument the prosecutor told the jury:

There is another matter that I want to bring to your attention. The Defendant has pleaded—in this case there are two pleas entered. The first is not guilty and the second is not guilty by reason of insanity. In other words, what he's saying is I didn't do it, but if I did do it I was crazy at the time.

Now, the State doesn't have any evidence to present to you that this man was sane at the time of the crime. We could not find a doctor to say that he was. So, in my opinion the only evidence that you will hear on the issue of insanity will be evidence that he was insane or not responsible at the time of the crime. I wanted to tell you that now so you won't wonder later on, well, where is the State doctor saying that he was sane. There aren't any. All of the doctors that I've talked to said he was insane at the time of the crime.

Now, the case is unusual in that respect. It's the first time in my experience as a prosecutor I've ever had to tell a Jury this, but that's the facts. Thank you.

The State made similar remarks about its lack of evidence on the issue of the appellant's sanity at the time of the offenses with which he was charged in its closing argument. There, remarkably, the prosecutor said:

As I told you at the outset again in my opening statement sanity would be an issue in this case and *I told you that the State did not have any evidence to produce that the Defendant was sane at the time of this crime and that's still the situation now.* All of the Doctors at Perkins indicated that the Defendant was insane.

Now, what you choose to do with that testimony as the trier of fact is up to you. *I'm not going to be ridiculous and argue to you that the Defendant was sane when I have no evidence to back that up.* I mean, that would be philosophically unfair in my opinion to say that to you because I don't think that's the case, but that decision is up to you based upon the evidence. (Emphasis added).

Under the law then applicable, the State shouldered two burdens of proof in its prosecution of the appellant. Both the burden of producing evidence of his guilt and the burden of producing evidence of his criminal responsibility required the State to offer evidence from which the jury could rationally find, beyond a reasonable doubt, in favor of the State on these separate issues. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980); *Brown v. State,* 8 Md.App. 462, 260 A.2d 665 (1970); *People v. Murphy,* 416 Mich. 453, 331 N.W.2d 152 (1982); *People v. Spears,* 63 Ill. App.3d 510, 20 Ill.Dec. 445, 380 N.E. 2d 423 (1978). As we noted in *Brown v. State, supra:*

By a special verdict the jury found that the appellant was sane at the time of the commission of the crimes. See *Mahoney v. State,* 8 Md.App. 44 [257 A.2d 462 (1969)]; *Turner v. State,* 5 Md.App. 584 [248 A.2d 801 (1968)]. The question of the sufficiency of the evidence on this issue comes before us on appellate review as does the question of the sufficiency of the evidence to sustain a verdict of guilty in a jury trial, namely on the denial of a

motion for judgment of acquittal made at the close of all the evidence. Such motion was here made and denied. The test to be applied by us in determining the sufficiency *vel non* of the evidence to sustain a verdict of sanity is the same as the test applied in our determination whether the evidence was sufficient to sustain a verdict of guilty. The evidence must show directly the fact to be proved or support a rational inference of the fact. The fact must be shown or the inference supported beyond a reasonable doubt. *Williams v. State*, 5 Md.App. 450, 452–460 [247 A.2d 731 (1968)]. But the weight of the evidence and the credibility of the witnesses are matters for the jury. *Shelton v. State*, 198 Md. 405 [84 A.2d 76 (1951)]; *Graef v. State*, 1 Md.App. 161 [228 A.2d 480 (1967)]. (Footnote omitted).

8 Md.App. at 464–65, 260 A.2d 665. *See also Robey v. State*, 54 Md.App. 60, 456 A.2d 953, *cert. denied*, 296 Md. 224 (1983); *Hawkins v. State, supra.*

■ The quality and quantity of evidence required to convince a rational fact finder of the criminal responsibility of an accused cannot be considered in a vacuum. It must depend to some extent on the evidence of a lack of criminal responsibility which rebuts it. *United States v. Bass*, 490 F.2d 846, 851 (5th Cir.1974), *overruled on other grounds*, *United States v. Lyons*, 731 F.2d 243 (5th Cir.1984); *United States v. Cooper*, 465 F.2d 451, 455 (9th Cir.1973); *Brock v. United States*, 387 F.2d 254, 257 (5th Cir.1967); *Wright v. United States*, 250 F.2d 4, 9 (D.C.Cir.1957); *People v. Spears*, 20 Ill.Dec. at 451–52, 380 N.E.2d at 429–30; *People v. Murphy*, 331 N.W.2d at 157–58; *People v. Rivera*, 78 A.D.2d 1002, 434 N.Y.S.2d 832, 833 (4th Dept.1980). In the instant case there was substantial evidence of the appellant's lack of criminal responsibility. The unimpeached, uncontroverted expert testimony unequivocally supported that conclusion. In the face of such overwhelming evidence, we hold that the State failed to produce sufficient evidence from which a rational trier of fact could have reached a contrary conclusion. The court should have

withdrawn the issue from the jury at the conclusion of the evidence, and after the jury's verdict on the guilt of the appellant of the crimes charged, a judgment of guilty of first degree felony murder and use of a handgun in the commission of a crime of violence but insane should have been entered. *Cf. Pouncey v. State,* 297 Md. 264, 465 A.2d 475 (1983). This procedure is in accord with the recognition that the issues of guilt and criminal responsibility are independent, notwithstanding their consideration within a single trial. *Ford v. Ford,* 307 Md. 105, 512 A.2d 389, 393–395 (1986); *Langworthy v. State,* 284 Md. 588, 399 A.2d 578 (1979); *Morris v. State,* 11 Md.App. 18, 272 A.2d 663, *cert. denied,* 261 Md. 727 (1971).

Accordingly, the judgments appealed from shall be vacated. The case will be remanded so that the court may enter the proper judgment and conduct further proceedings in accordance with Md. Code (1982), § 12–110 of the Health-General Article which was applicable to this case. Section 4 of Chapter 501 of the Acts of 1984, *supra.*

## II.

The appellant's argument that the evidence was insufficient to sustain his convictions of felony murder and use of a handgun in that crime need not detain us long. He asserts that there was insufficient evidence to find beyond a reasonable doubt that there had been a robbery because there was no showing that the appellant took anything of value from the victim. He contends that since robbery was the underlying felony supporting the murder conviction, it and the handgun conviction must be reversed. We disagree.

Our review of the record leads us to conclude that *"any* rational trier of fact" could have found that the appellant was guilty of both crimes. *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89, 61 L.Ed.2d at 573, *Tichnell v. State,* 287 Md. at 717, 415 A.2d 830. (Emphasis in original). The evidence revealed that the appellant had

been arguing with the victim, and had, moments before the killing, threatened to rob and kill the victim. Two of the witnesses testified that the appellant had flashed a handgun when he made his threats. Further, the evidence showed that one of the witnesses, Voss, had been paid in cash by the victim just prior to when the appellant went into the victim's office. Voss also testified that after he was paid, the victim still had $300 to $400 in a money clip. Sergeant Landsman testified that the victim had been shot, and that an empty money clip was found next to his body. Based upon that evidence, the jury could infer that the appellant did what he threatened to do—that he shot the victim with a handgun in the course of robbing him.

JUDGMENTS VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH DIRECTIONS AND FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION;

COSTS TO BE DIVIDED BETWEEN THE APPELLANT AND THE MAYOR AND CITY COUNCIL OF BALTIMORE.